| | |
|---|---|
| Jonathan J. Lamberson (CA SBN 239107)<br>lamberson@fr.com<br>Meghana RaoRane (CA SBN 253531)<br>raorane@fr.com<br>FISH & RICHARDSON P.C.<br>500 Arguello Street, Suite 500<br>Redwood City, CA 94063<br>Telephone: (650) 839-5070<br>Facsimile: (650) 839-5071<br><br>Indranil Mukerji (*pro hac vice*)<br>mukerji@fr.com<br>FISH & RICHARDSON P.C.<br>1000 Maine Avenue SW<br>Washington, D.C. 20024<br>Telephone: (202) 783-5070<br>Facsimile: (202) 783-2331<br><br>Ricardo Bonilla (*pro hac vice*)<br>rbonilla@fr.com<br>FISH & RICHARDSON P.C.<br>1717 Main Street, Suite 5000<br>Dallas, TX 75201<br>Telephone: (214) 747-5070<br>Facsimile: (214) 747-2091<br><br>Attorneys for Defendant<br>MICROSOFT CORPORATION | M. ELIZABETH DAY (TX SBN 177125)<br>eday@feinday.com<br>DAVID ALBERTI (TX SBN 220265)<br>dalberti@feinday.com<br>MARC BELLOLI (TX SBN 244290)<br>mbelloli@feinday.com<br>FEINBERG DAY ALBERTI LIM &<br>  BELLOLI LLP<br>1600 El Camino Real, Suite 280<br>Menlo Park, CA 94025<br>Telephone: (650) 618-4360<br>Facsimile: (650) 618-4368<br><br>Hao Ni (*pro hac vice*)<br>*hni@nilawfirm.com*<br>NI, WANG & MASSAND, PLLC<br>8140 Walnut Hill Lane, Suite 500<br>Dallas, TX 75231<br>Telephone: (972) 331-4600<br>Facsimile: (972) 314-0900<br><br>Attorneys for Plaintiff<br>HYPERMEDIA NAVIGATION, LLC |

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| HYPERMEDIA NAVIGATION LLC,<br><br>    Plaintiff,<br><br>v.<br><br>MICROSOFT CORPORATION,<br><br>    Defendant. | Case No. 4:18-cv-00670-HSG<br><br>**STIPULATION AND ORDER RE DISCOVERY OF ELECTRONICALLY STORED INFORMATION FOR PATENT LITIGATION** |

Upon the stipulation of the parties, the Court ORDERS as follows:

1. This Order supplements all other discovery rules and orders. It streamlines Electronically Stored Information ("ESI") production to promote a "just, speedy, and inexpensive determination of this action, as required by Federal Rule of Civil Procedure 1."

2. This Order may be modified in the Court's discretion or by stipulation.

3. As in all cases, costs may be shifted for disproportionate ESI production requests pursuant to Federal Rule of Civil Procedure 26. Likewise, a party's nonresponsive or dilatory discovery tactics are cost-shifting considerations.

4. A party's meaningful compliance with this Order and efforts to promote efficiency and reduce costs will be considered in cost-shifting determinations.

5. General ESI production requests under Federal Rules of Civil Procedure 34 and 45 shall not include email or other forms of electronic correspondence (collectively "email"). To obtain email parties must propound specific email production requests.

6. The parties may use keyword searches to assist in identifying relevant, non-privileged ESI responsive to requests for production. The parties shall not be required to search for or preserve information stored at locations that are inaccessible or accessible only through extraordinary measures, including backup systems/tapes, disaster recovery systems, residual, deleted, fragmented, damaged or temporary data, and/or encrypted data where the key or password cannot be ascertained after reasonable efforts. Additionally, the parties need not search for or preserve information stored solely on personal digital assistants, mobile phones, voicemail systems, instant messaging systems, and social media (such as Facebook or Twitter).

7. The parties shall not be required to suspend automated deletion that is associated with electronic databases, server log files, or backup or disaster recovery systems. With respect to web pages, the parties need only make good faith efforts to preserve the source code responsible for the dynamic generation of such pages, not the actual content(s) of such pages.

8. Email production requests shall only be propounded for specific issues, rather than general discovery of a product or business. Prior to any production of emails, the parties shall meet and confer and discuss and explain the necessity of the requested email production.

9. Email production requests shall be phased to occur after the parties have exchanged initial disclosures and basic documentation about the patents, the prior art, the accused instrumentalities, and the relevant finances. While this provision does not require the production

of such information, the Court encourages prompt and early production of this information to promote efficient and economical streamlining of the case.

10. Email production requests shall identify the custodian, search terms, and time frame. The parties shall cooperate to identify the proper custodians, proper search terms and proper timeframe as set forth in the Guidelines.

11. Each requesting party shall limit its email production requests to a total of three custodians per producing party for all such requests. The parties may jointly agree to modify this limit without the Court's leave. The Court shall consider contested requests for additional custodians, upon showing a distinct need based on the size, complexity, and issues of this specific case. Cost-shifting may be considered as part of any such request.

12. Each requesting party shall limit its email production requests to a total of five search terms per custodian per party. The parties may jointly agree to modify this limit without the Court's leave. The Court shall consider contested requests for additional search terms per custodian, upon showing a distinct need based on the size, complexity, and issues of this specific case. The Court encourages the parties to confer on a process to test the efficacy of the search terms. The search terms shall be narrowly tailored to particular issues. Indiscriminate terms, such as the producing company's name or its product name, are inappropriate unless combined with narrowing search criteria that sufficiently reduce the risk of overproduction. A conjunctive combination of multiple words or phrases (*e.g.*, "computer" and "system") narrows the search and shall count as a single search term. A disjunctive combination of multiple words or phrases (*e.g.*, "computer" or "system") broadens the search, and thus each word or phrase shall count as a separate search term unless they are variants of the same word. Use of narrowing search criteria (*e.g.*, "and," "but not," "w/x") is encouraged to limit the production and shall be considered when determining whether to shift costs for disproportionate discovery. Should a party serve email production requests with search terms beyond the limits agreed to by the parties or granted by the Court pursuant to this paragraph, this shall be considered in determining whether any party shall bear all reasonable costs caused by such additional discovery.

13. Nothing in this Order prevents the parties from agreeing to use technology assisted review and other techniques insofar as their use improves the efficacy of discovery.

14. Electronic data should be provided in the following format:

    A. *TIFFs*. Each document shall be produced in Group IV Tagged Image File Format ("TIFF") regardless of whether such documents are stored by the parties in the ordinary course of business in electronic or hard copy form. When reasonably feasible, each TIFF image file should be one page and should reflect how the source document would appear if printed to hard copy.

    B. *Database Load Files/Cross-Reference Files*. Documents should be provided with an image load file that can be loaded into commercially acceptable production software (e.g., Concordance, Summation, Relativity). Each TIFF in a production should be referenced in the corresponding image load file. The total number of documents referenced in a production's data load file shall match the total number of designated document breaks in the Image Load file(s) in the production.

    C. *Text files*. For each document, a document-level text file should be provided in addition to the TIFFs. The text of native files should be extracted directly from the native file, and each text file will be named using its corresponding image files (e.g., ABC0000001.TXT). Documents for which text cannot be extracted will be produced with OCR.

    D. *Hard Copy Documents*. Hard copy documents shall be scanned using Optical Character Recognition ("OCR") technology and searchable ASCII text (or Unicode text if the text is in a language requiring characters outside of the ASCII character set) files shall be produced. Each file shall be named with the unique Bates Number of the first page of the corresponding TIFF document followed by the extension "TXT"

    E. *Redactions*. With respect to documents containing redacted text, no text will be provided for the redacted portion. OCR will be provided for the unredacted portions of the documents.

F. *Unique IDs*. Each image should have a unique file name which will be the Bates number of that page. The Bates number must appear on the face of the image in the lower right corner.

G. *Unique Documents*. The parties agree to use reasonable efforts to de-duplicate, using a verifiable process, documents within the production. If copies of a responsive document are stored at more than one location within a party's possession, custody, or control, the producing party shall not be required to search for or produce more than one such copy of the responsive document absent a showing of good cause that the production of additional copies is necessary.

H. *Metadata*. The parties agree to produce the following metadata for each document, to the extent it is reasonably available:

- BegDoc – The unique designation for the beginning of the document.
- EndDoc – The unique designation for the end of the document
- BEGATTACH – the beginning of any attachments to the document
- ENDATTACH – the end of any attachments to the document
- Custodian – the custodian of the document
- Email Subject - Subject of the e-mail message extracted by metadata extraction software
- Email From - Author of e-mail message extracted by metadata extraction software
- Email To - Recipients of email message extracted from email file by metadata extraction software
- Email CC - Recipients of 'Carbon Copies' of the e-mail message extracted by software.
- Email BCC - Recipients of 'Blind Carbon Copies' for e-mail messages extracted by software
- Date Received - Received date and time of an e-mail message (according to original time zones) extracted by metadata extraction software.

- Date Sent - Sent date and time of an e-mail message (according to original time zones) DEFAULT TIMEZONE IS GMT
- ParentID – the parent of any documents in a family of documents
- File Name - File name of the native file extracted as metadata
- DocType – the file format of the document
- Document Extension - File extension of document that represents the file type to Windows Operating System created by metadata extraction software.
- File size - Size of the native file in bytes provided by the metadata extraction software (Whole Number only)
- Author - Author field extracted from the metadata of document by metadata extraction software. This field will be empty for emails.
- Date Created - Date and time from the Date Created property extracted by the metadata extraction software from original file.
- Date Last Modified - Date and time from the Modified property of a document, representing the date and time that changes to the document were last saved extracted by metadata extraction software.
- MD5Hash - Unique Identifier  -OR-  SHA-1Hash - Unique Identifier

The fields Date Received, Date Sent, Date Created, and Date Last Modified will be provided in the format:  mm/dd/yyyy hh:mm:ss

   I. *Native Format*.  The parties have agreed that the following documents may be produced in native format: Excel files, Access Files, Microsoft Project Files, CAD files, GDS files, and GDSII files.  Native files will be produced with a placeholder TIFF image.  Each TIFF placeholder will contain the endorsed Bates number, endorsed confidentiality designation, and the name of the native file.  The parties reserve the ability to produce other types of files in native form, or to request that other file types be produced in native form or in another reasonably usable form upon review of the other party's production.  The parties reserve their respective rights to object to any such request.

1  J.  *Databases*. Certain types of databases kept in the normal course of business contain information that allows for analysis and computation and as such the data may be produced in an electronic format. Data from these types of databases may be produced in database or delimited text file format, as reasonably available.

K.  *Non-convertible Files.*

i.  Certain types of files such as system, program, video, and sound files may not be amenable to conversion into anything meaningful in TIFF format. Responsive, non-convertible files may be produced in the form of native files with a placeholder TIFF image. Some examples of file types that may not convert include file types with the following extensions: *.ai *.aif *.bin *.brd *.cab *.cfg *.chi *.chm *.com *.dll *.dsn *.eps *.exe *.exp *.hlp *.hqx *.idb *.ilk *.iso *.ivi *.ivt *.ix *.lib *.mpeg *.mpg *.mov *.mp3 *.mpe *.msi *.nls *.obj *.ocx *.opj *.opt *.pdb *.pch *.psd *.psp *.ptf *.ram *.res *.rm *.rmi *.step *.sys *.swf *.snd *.tag *.tlh *.tmp *.trg *.ttf *.vbx *.wav *.wmv *.wma*.wpg *.xfd.

ii.  Non-convertible files may be produced natively and with a placeholder TIFF image. Each TIFF placeholder will contain the endorsed Bates number, endorsed confidentiality designation, and the name of the non-convertible file, including the file extension.

L.  *Gaps*. Productions should contain sequential Bates numbers with no gaps. There should be no gaps in Bates numbers between productions. A unique production volume number will be used for each production. If any unavoidable gaps occur, the parties agree to provide advance notice of those gaps within productions and/or between productions.

M.  *Parent-child Relationships*. Parent-child relationships, if available, will be preserved.

15.  *Production Media and Labels*. Documents will be produced either via FTP or on CD-ROM or DVD or on portable hard drives. The parties agree to attach a label to each piece of media containing production data. The label will provide the following information:

Case name

Case number

Production date

| | |
|---|---|
| 1 | Volume number |
| 2 | Bates range |
| 3 | Confidentiality designation (if applicable) |

16. Nothing in this Order is intended to prevent either party from complying with the requirements of the European Union's General Data Protection Regulation (GDPR) (EU) 2016/679. The parties agree to meet and confer before including European custodians or data sources in any ESI or other discovery request in order to discuss compliance with GDPR.

**IT IS SO STIPULATED**, through Counsel of Record.

Dated: June 19, 2018　　　　　　　　NI, WANG & MASSAND, PLLC

By: */s/ Hao Ni*
*(with permission by Jonathan J. Lamberson)*
Hao Ni

Attorneys for Plaintiff
HYPERMEDIA NAVIGATION, LLC

Dated: June 19, 2018　　　　　　　　FISH & RICHARDSON P.C.

By: */s/ Jonathan J. Lamberson*
Jonathan J. Lamberson

Attorneys for Defendant
MICROSOFT CORPORATION

## **ATTESTATION**

Pursuant to Civil L.R. 5-1(i)(3), I attest that concurrence in the filing of the document has been obtained from each of the other signatories above.

*/s/ Jonathan J. Lamberson*
Jonathan J. Lamberson

**IT IS ORDERED** that the forgoing Agreement is approved.

Dated: June 19, 2018

Hon. Haywood S. Gilliam, Jr.
United States District Court